UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 3:17cr184-RJC |
| v. | **BILL OF INDICTMENT** <br><br> Violations: <br> 26 U.S.C. § 7203 <br> 26 U.S.C. § 7206(2) |
| WILLIAM TODD COONTZ | |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

**I. Introduction**

1. From in or about 2010 to in or about 2014, Defendant WILLIAM TODD COONTZ ("COONTZ"), a resident of Charlotte, North Carolina, was the minister of RockWealth International Ministries ("Rockwealth Ministries") and the author of numerous books on faith and finances, such as "Please Don't Repo My Car," "Breaking the Spirit of Debt," and "7 Myths about Money: What you Think you Know about Money Will Bankrupt You." COONTZ also operated two for-profit companies, Legacy Media and Coontz Investments and Insurance.

2. Beginning in at least tax year 2000 and continuing through at least tax year 2014, COONTZ routinely filed delinquent U.S. Federal Income Tax Returns, Forms 1040, with the Internal Revenue Service (IRS) and consistently failed to make timely payments on the taxes due and owing as set out on his income tax returns. For tax years 2011 through 2013, COONTZ filed delinquent tax returns and failed to pay the total assessed taxes when the returns were filed. As of May 2015, he had amassed federal tax liabilities, including penalties and interest, totaling $326,394 for those years.

3. Furthermore, COONTZ filed false federal income tax returns for tax years 2010 through 2013 which underreported his income. Specifically, COONTZ filed tax returns that failed to include taxable income he received through various checks sent to his home address which he subsequently cashed. By cashing the checks, COONTZ concealed them from his bookkeeper and caused them to be omitted from his accounting records. These unreported cashed checks totaled approximately $252,037.99 relative to tax years 2010 through 2013. Additionally, COONTZ underreported his income on his tax returns during these same years by failing to include as income payments made by his corporations and ministry for his personal expenses, including payments for the benefit of his family members and for meals and entertainment.

## II. Tax Filing History

4.  Beginning at least as early as the 2000 tax year, COONTZ consistently filed tax returns after their due dates. For example, COONTZ filed delinquent federal tax returns for the tax years listed below on the dates set out below:

| Tax Year | Date Return Filed |
|---|---|
| 2000 | 06/20/2003 |
| 2001 | 10/06/2003 |
| 2002 | 02/09/2005 |
| 2003 | 11/27/2006 |
| 2004 | 12/08/2005 |
| 2005 | 02/27/2008 |
| 2006 | 02/10/2009 |
| 2007 | 04/07/2009 |
| 2010 | 10/17/2011 |
| 2011 | 08/26/2013 |
| 2012 | 12/24/2013 |
| 2013 | 10/20/2014 |

5.  Regardless of whether COONTZ filed his returns delinquently or on the dates required by law, COONTZ failed to make timely payments of his taxes with his federal tax returns every year from 2000 through 2014.

6.  COONTZ routinely received correspondence from the IRS regarding his delinquent tax filing and his unpaid assessed taxes. With regard to tax years 2007 through 2013, for example, COONTZ received letters and notices from the IRS, including:

| Date | Tax Year | IRS Letter or Notice Received |
|---|---|---|
| 05/04/2009 | 2007 | IRS Notice CP-14 stating "According to our records, you have an amount due on your income tax" showing total amount owed as $19,275.35. |
| 11/23/2009 | 2008 | IRS Notice CP-14 stating, "According to our records, you have an amount due on your income tax" showing total amount owed as $35,960.29. |
| 12/28/2009 | 2008 | IRS Letter CP-503, stating, "IMPORTANT Immediate action is required. We previously wrote to you about your unpaid account, but you haven't contacted us about it" showing current balance as $36,265.00. |
| 11/22/2010 | 2009 | IRS Notice CP-14 stating, "According to our records, you have an amount due on your income tax" listing total amount owed as $19,993.64 |
| 12/27/2010 | 2009 | IRS Letter CP-503 stating, "IMPORTANT Immediate action is required. We previously wrote to you about your unpaid account, but you haven't |

2

| | | contacted us about it" showing current balance as $20,153.25. |
|---|---|---|
| 10/10/2011 | 2009 | IRS Notice CP-71 stating, "Reminder of overdue taxes for 2009. Amount due: $145.99" |
| 11/21/2011 | 2010 | IRS Notice CP-14 stating, "You have unpaid taxes for 2010. Amount due: $20,750.69" |
| 12/26/2011 | 2010 | IRS Notice CP-503 stating, "Second reminder: You have unpaid taxes for 2010. Amount due: $20,902.19" |
| 09/30/2013 | 2011 | IRS Notice CP-14 stating, "You have unpaid taxes for 2011. Amount due: $86,306.53" |
| 11/04/2013 | 2011 | IRS Notice CP-503 |
| 12/09/2013 | 2011 | IRS Letter CP-504 stating, "Notice of intent to levy. Intent to seize your property or rights to property. Amount due immediately: $87,108.30" |
| 02/24/2014 | 2012 | IRS Notice CP-14 stating, "You have unpaid taxes for 2012. Amount due: $150,964.91" |
| 05/05/2014 | 2012 | IRS Letter CP-504, stating "Notice of intent to seize ('levy') your state tax refund or other property. Amount due immediately: $112,426.92" |
| 12/01/2014 | 2013 | IRS Notice CP-14, stating "You have unpaid taxes for 2013. Amount due: $145,701.77" |
| 12/22/2014 | 2013 | IRS Letter CP-504, stating "Notice of intent to seize ('levy') your state tax refund or other property. Amount due immediately: $146,629.86" |

## III. Check Cashing Scheme

7. During 2010 through 2013, COONTZ regularly traveled to speak at various ministries. These ministries generally paid COONTZ a speaking fee and his travel expenses. COONTZ hid income from the IRS by claiming the travel as a business expense while simultaneously receiving travel reimbursement that he kept as personal income. In order to conceal the payments, COONTZ directed, or caused his travel assistant to direct, the ministries to make reimbursements for travel expenses directly to COONTZ, rather than to Rockwealth Ministries -- the entity that paid for his travel. Specifically:

  a. COONTZ, or his travel assistant, directed that travel reimbursement payments be made payable to "Todd Coontz" and sent to his personal address. In order to conceal the money, COONTZ cashed these checks rather than deposit them into a bank account.

  b. In order to boost his income, COONTZ told his travel assistant to bill the churches for the cost of a full fare first-class ticket even though his actual expenses for those tickets was substantially less than the amount billed. COONTZ prepared and caused to be prepared fraudulent travel invoices that were submitted to the ministries by email that falsely purported that COONTZ had actually paid the full fare ticket price. As

3

a result, the travel reimbursement checks sent directly to COONTZ were for amounts in excess of the actual travel expenses incurred by Rockwealth Ministry.

   c.   As a result of this conduct, the actual cost of the ticket was booked in the Rockwealth Ministries accounting records as a travel expense. COONTZ concealed his reimbursement, including the fraudulently inflated travel costs, from his bookkeeper.

   d.   As a result, COONTZ caused his ministry accounting to include travel expenses but to fail to include offsetting payments meant to reimburse these expenses. As a further result, COONTZ caused his ministry accounting to fail to show income or distributions to him through the reimbursement of costs billed for his travel.

   e.   On some occasions, COONTZ caused his travel assistant to instruct ministries not to include payments received as "travel reimbursement" on any Forms 1099 submitted to the IRS because the payments were supposedly just for reimbursement.

8.   During 2010 through 2013, COONTZ also directed that other checks, such as payments for speeches and for the purchase of books and other products, be made payable to "Todd Coontz" and sent to his personal address. COONTZ again cashed these checks rather than deposit them into a bank account. As a result, COONTZ's bookkeeper was unaware of his receipt of these payments and his accounting records did not reflect this income.

9.   In total, COONTZ concealed and cashed at least 102 checks for travel reimbursement, speeches, and books and other products, totaling at least $252,037.99 in 2010 through 2013 that were unknown to his bookkeeper and not reflected in his accounting records, therefore resulting in his total income being underreported on his federal income tax returns.

10.   During 2014, COONTZ continued to conceal and cash checks received as payments for travel reimbursement, speeches, and books and other products. Specifically, he cashed at least 32 checks totaling $105,454.90 that were unknown to his bookkeeper and not reflected in his accounting records.

11.   During the same time-period that COONTZ concealed and cashed these checks, he spent substantial amounts of cash to pay for personal expenditures. For example:

   a.   Between July 2012 and November 2013, COONTZ made cash payments to David Yurman, a designer jewelry store, totaling more than $21,000.

   b.   Between July 2012 and October 2013, COONTZ made cash payments to Montblanc, a retailer which sold luxury writing instruments, watches, jewelry and leather goods, totaling approximately $3,000.

   c.   Between August 2012 and December 2013, COONTZ made more than $14,000 in cash payments to Diamonds Direct, a jewelry store.

4

## IV. Concealment of Income and Assets

12. For several years prior to 2010, COONTZ employed a Certified Public Accountant (CPA) to prepare his individual income tax returns and corporate tax returns for Legacy Media and Coontz Insurance and Investments. This CPA repeatedly told COONTZ that COONTZ should receive a salary from his corporations rather than taking income through distributions, such as COONTZ's payment of his personal expenses directly from corporate accounts.

13. Indeed, as far back as 2003, COONTZ received advice from a different CPA instructing him to stop commingling funds between his business and personal accounts.

14. COONTZ refused to follow the advice of either CPA, and from 2010 to 2013, COONTZ did not receive a salary from his corporations, instead receiving the majority of his income through the payment of his personal expenses by his corporations, including Legacy Media and Rockwealth Ministries.

15. Not only was COONTZ dodging the payment of his taxes and living out of his corporations from 2010 to 2013, but also the tax returns he did file were false. Specifically:

    a. COONTZ received additional unreported income through his receipt of various checks made payable to "Todd Coontz" and sent to COONTZ's personal address that were cashed rather than deposited into bank accounts. As a result, COONTZ's bookkeeper was unaware of his receipt of these checks and his accounting records did not reflect these payments.

    b. Furthermore, COONTZ received additional unreported income through the payment of his personal expenses by his corporations that were falsely deducted as business expenses and were otherwise not included as income on his individual income tax returns.

16. During the same time-period that he filed delinquent tax returns, failed to make timely payments of his taxes owed, did not receive a salary from his corporations or his ministry, and lied on his tax returns, COONTZ maintained limited assets in his own name. Instead of holding assets in his own name, COONTZ utilized residences and vehicles titled in the names of Legacy Media, Coontz Investments and Insurance, and Rockwealth Ministries.

    a. Vehicles purchased by Legacy Media, Coontz Investments and Insurance and Rockwealth Ministries during 2011 through 2013 included: a 2011 BMW, a 2011 Regal 2500 boat, a 2012 BMW convertible, a 2011 Lexus, a 2011 Land Rover, a 2006 Ferrari, a 2012 Maserati, a 2013 BMW, a 2013 Land Rover, and a 2012 Ferrari. All payments associated with these vehicles were treated as business expenses on corporate and ministry accounting records even though COONTZ's family members drove some of the vehicles and no records were kept about supposed business use of the vehicles.

    b. Additionally, in 2012, Rockwealth Ministries purchased a $1.5 million condominium as the parsonage for COONTZ.

## V. False Tax Returns – 2010 to 2013

17. For tax year 2010, as in prior tax years, COONTZ employed a CPA to prepare his individual returns and corporate returns for Legacy Media. As a result of the CPA's review of COONTZ's accounting records, the CPA adjusted alleged business expenses per relevant accounting rules, such as eliminating inappropriate business expenses and reducing the expense for "meals and entertainment" listed in Legacy Media's accounting records by half. As a result, the $5,696.00 claimed by Legacy Media as "meals and entertainment expenses" on its accounting records was reduced by $2,848 as a business expense on the Legacy Media corporate tax return.

18. As a result of his CPA's work, COONTZ reported substantial income on his 2010 individual income tax return; specifically, COONTZ reported income of $264,602.00 from Legacy Media, the vast majority of which he received by payment of his personal expenses directly from corporate bank accounts rather than as payments made directly to him.

19. Yet in that same tax year, COONTZ did not employ a CPA to review the accounting records for Rockwealth Ministries. Therefore, COONTZ did not report as income any distributions or payments made for his personal benefit by Rockwealth Ministries and no adjustments were made to business expenses. Therefore, the CPA did not review the business expenses taken for that year to determine whether or not they were appropriate, nor did the CPA reduce the meals and entertainment expenses by half as required. As a result, COONTZ received income through the payment of his personal expenses by Rockwealth Ministries that were falsely treated as business expenses and were otherwise not included as income on his individual income tax return, specifically:

    a. Expenses of approximately $16,457.64 for meals, including approximately 40 distinct charges at BrickTops restaurant and approximately 30 distinct charges at Red Lobster.

20. For tax year 2010, COONTZ also failed to report as income approximately $40,893.32 he received from at least 23 checks that he cashed and concealed from his accounting records, his bookkeeper, and his CPA.

21. As a result of COONTZ's refusal to follow the CPA's advice, the CPA terminated his engagement with COONTZ after the 2010 tax year. For tax years 2011 through 2013, COONTZ did not utilize a CPA to prepare his individual and corporate tax returns and, therefore, no one reviewed his or his bookkeeper's characterization of business expenses in his accounting records. Instead, his returns were prepared based on the fraudulent and incomplete accounting records maintained by his bookkeeper at his instruction, and COONTZ's claimed business expenses skyrocketed.

22. For tax year 2011, COONTZ reported substantial income on his individual income tax returns from Legacy Media and Rockwealth Ministry; the vast majority of this income was obtained by payment of his personal expenses directly from corporate and ministry bank accounts rather than as payments made directly to him. For 2011, COONTZ reported income from Legacy Media of $524,853.00 and income from Rockwealth Ministry of

6

$112,652.00. Yet COONTZ substantially understated his income by omitting additional income received from cashed checks and by falsely characterizing various payments as business expenses, although the expenses should have been all or partially treated as personal income to COONTZ.

    a.    For tax year 2011, COONTZ failed to report as income approximately $86,662.83 he received from at least 36 checks that he cashed and concealed from his accounting records and his bookkeeper.

    b.    In 2011, Legacy Media deducted the following as business expenses, although these expenses should have been all or partially included as personal distributions to COONTZ:

        i.    Expenses of approximately $5,953.15 for repairs and maintenance of vehicles, including a Lexus driven by COONTZ's then wife and a Mustang driven by his son.

        ii.    Expenses of more than $29,000 for payments to COONTZ's mother as "contract expenses."

        iii.    Expenses of approximately $14,160.07 for purported "meals and entertainment expenses" including more than 147 distinct charges at movie theaters.

    c.    In 2011, Rockwealth Ministries treated the following payments as business expenses, although these expenses should have been all or partially treated as personal distributions to COONTZ:

        i.    Expenses of approximately $65,294.50 for clothing purchases as "TV Wardrobe."

        ii.    Expenses of approximately $21,235.29 for meals, including approximately 194 distinct charges at BrickTops restaurant.

23.    For tax year 2012, COONTZ reported substantial income on his individual income tax returns from Legacy Media and Rockwealth Ministry; the vast majority of this income was obtained by payment of his personal expenses directly from corporate and ministry bank accounts rather than as payments made directly to him. For 2012, COONTZ reported income from Legacy Media of $402,424.00 and income from Rockwealth Ministry of $23,264.00. Yet COONTZ substantially understated his income by omitting additional income received from cashed checks and by falsely characterizing various payments as business expenses, although the expenses should have been all or partially treated as personal income to COONTZ.

    a.    For tax year 2012, COONTZ failed to report as income approximately $97,298.54 that he received from at least 28 checks that he cashed, and one additional

7

check that he deposited into a personal account, and concealed from his accounting records and his bookkeeper.

b.    In 2012, Legacy Media deducted the following as business expenses, although these expenses should have been all or partially included as personal distributions to COONTZ:

    i.    Expenses of approximately $23,200 for payments to COONTZ's mother as "contract services."

    ii.    Expenses of approximately $26,009.68 for purported "meals and entertainment expenses" including at least 231 distinct charges at movie theaters.

c.    In 2012, Rockwealth Ministries treated the following payments as business expenses, although these expenses should have been all or partially treated as personal distributions to COONTZ:

    i.    Expenses of approximately $44,289.97 for "TV Wardrobe."

    ii.    Expenses of approximately $25,127.66 for meals, including approximately 180 distinct charges at BrickTops restaurant.

24.    For tax year 2013, COONTZ reported substantial income on his individual income tax returns from Legacy Media and Rockwealth Ministry; the vast majority of this income was obtained by payment of his personal expenses directly from corporate and ministry bank accounts rather than as payments made directly to him. For 2013, COONTZ reported income from Legacy Media of $396,481.00 and income from Rockwealth Ministry of $20,734.00. Yet COONTZ substantially understated his income by omitting additional income received from cashed checks and by falsely characterizing various payments as business expenses, although the expenses should have been all or partially treated as personal income to COONTZ.

a.    For tax year 2013, COONTZ failed to report as income approximately $62,183.30 that he received from at least 15 checks that he cashed, and 2 checks that he deposited into a personal account, and concealed from his accounting records and his bookkeeper.

b.    In 2013, Legacy Media deducted the following as business expenses, although these expenses should have been all or partially included as personal distributions to COONTZ:

    i.    Expenses of approximately $23,733.82 for purported "meals and entertainment expenses" including more than 30 distinct charges at movie theaters, 75 distinct charges at Panera Bread, and 45 distinct charges at BrickTops restaurant.

8

    ii.  Expenses of approximately $4,739 as "Legal" expenses that were for his divorce.

  c.  In 2013, Rockwealth Ministries treated the following payments as business expenses, although these expenses should have been all or partially treated as personal distributions to COONTZ:

    i.  Expenses of approximately $118,200.34 for "TV Wardrobe."

    ii.  Expenses of approximately $13,571.79 for meals, including approximately 54 distinct charges at BrickTops restaurant.

9

## COUNTS ONE THROUGH THREE
### Failure to Pay Tax

25. Paragraphs 1 through 24 of the Bill of Indictment are re-alleged and incorporated herein.

26. During the calendar years set out below, the Defendant, **WILLIAM TODD COONTZ**, who was a resident of Charlotte, North Carolina, had and received taxable income of at least the amounts set out below, on which taxable income there was owing to the United States of America an income tax of at least the amount set out below. He was required by law to pay, on or before the dates set out below, that income tax to the Internal Revenue Service Center in the location set out below or to another Internal Revenue Service office permitted by the Commissioner of the Internal Revenue. Well knowing all the foregoing, he did willfully fail, on or about the dates set out below, in the Western District of North Carolina and elsewhere, to pay the total amount of income tax due:

| Count | Calendar Year | Taxable Income per Return | Tax Due per Return | Service Center Location | Date Tax Due |
|---|---|---|---|---|---|
| 1 | 2011 | $458,752.00 | $160,897.00 | Atlanta, Georgia | April 17, 2012 |
| 2 | 2012 | $339,696.00 | $122,177.00 | Louisville, Kentucky | April 15, 2013 |
| 3 | 2013 | $383,944.00 | $135,280.00 | Louisville, Kentucky | April 15, 2014 |

All in violation of Title 26, United States Code, Section 7203.

10

## COUNTS FOUR THROUGH SEVEN
(Aiding and Assisting in Filing False Tax Returns)

27. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 24 of the Bill of Indictment, and further alleges that:

28. On or about the dates listed below, in the Western District of North Carolina, the Defendant, **WILLIAM TODD COONTZ**, a resident of Charlotte, North Carolina, and elsewhere, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of U.S. Individual Income Tax Returns, Forms 1040, of Defendant, **WILLIAM TODD COONTZ** for the calendar years listed below that were false and fraudulent as to a material matter, as set out below, in that they understated his total income, whereas, as the defendant then and there knew and believed, his total income for said calendar year was substantially in excess of the amount stated:

| Count | Date Return Filed | Calendar Year | False Item |
|---|---|---|---|
| 4 | 10/12/2011 | 2010 | Total Income – Line 22 |
| 5 | 5/30/2013 | 2011 | Total Income – Line 22 |
| 6 | 12/24/2013 | 2012 | Total Income – Line 22 |
| 7 | 10/20/2014 | 2013 | Total Income – Line 22 |

All in violation of Title 26, United States Code, Section 7206(2).

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

*/s/ Jenny Grus Sugar*
JENNY GRUS SUGAR
ASSISTANT UNITED STATES ATTORNEY

11